Matter of Gabel (Bankers Life & Cas. Co.--Commissioner of Labor) (2021 NY Slip Op 06406)





Matter of Gabel (Bankers Life & Cas. Co.--Commissioner of Labor)


2021 NY Slip Op 06406


Decided on November 18, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:November 18, 2021

531571
[*1]In the Matter of the Claim of Christopher M. Gabel, Respondent. Bankers Life and Casualty Company, Appellant. Commissioner of Labor, Respondent.

Calendar Date:October 19, 2021

Before:Garry, P.J., Lynch, Clark, Reynolds Fitzgerald and Colangelo, JJ.

Littler Mendelson, PC, Fairport (Pamela S.C. Reynolds of counsel), for appellant.
David E. Woodin, Catskill, for Christopher M. Gabel, respondent.
Letitia James, Attorney General, New York City (Linda D. Joseph of counsel), for Commissioner of Labor, respondent.



Colangelo, J.
Appeals from two decisions of the Unemployment Insurance Appeal Board, filed November 21, 2019, which ruled that Bankers Life and Casualty Company was liable for unemployment insurance contributions based upon remuneration paid to claimant and others similarly situated.
In March 2016, claimant, a licensed insurance broker and agent during the time period in question, entered into a written agreement with Bankers Life and Casualty Company (hereinafter BLC) to sell annuity and health and life insurance policies. In June 2016, BLC terminated its relationship with claimant, prompting claimant to file a claim for unemployment insurance benefits. Thereafter, the Department of Labor issued a determination finding that claimant was eligible for benefits based upon remuneration paid to him and others similarly situated. BLC objected and requested a hearing. Following a hearing, an Administrative Law Judge sustained BLC's objection and overruled the determination. Upon review, the Unemployment Insurance Appeal Board reversed the decision of the Administrative Law Judge, finding that claimant's services were not statutorily exempted from the term employment under Labor Law § 511 (21) because some of his services were inconsistent with the statutorily-required provisions contained in the parties' written agreement and that the credible evidence established that BLC exercised, or reserved the right to exercise, sufficient supervision, direction and control over claimant's services to create an employment relationship under the unemployment insurance law. BLC appeals.
BLC initially contends that its written agreement with claimant satisfied the requirements of Labor Law § 511 (21), thereby excluding the services provided by claimant from the definition of "employment" and rendering him ineligible to receive unemployment insurance benefits. Labor Law § 511 (21) provides that "[t]he term 'employment' shall not include the services of a licensed insurance agent or broker" if, among other things, "the services performed by the agent or broker are performed pursuant to a written contract" (Labor Law § 511 [21] [c]), and such contract, in turn, contains seven statutorily enumerated provisions (see Labor Law § 511 [21] [d] [i]-[vii]; Matter of Rodriguez [Penn Mut. Life Ins. Co.-Commissioner of Labor], 193 AD3d 1190, 1191 [2021]; Matter of Joyce [Coface N. Am. Ins. Co.-Commissioner of Labor], 116 AD3d 1132, 1133 [2014]). Although the parties do not dispute that their written agreement contained the seven statutorily-enumerated provisions (see Labor Law § 511 [21] [d] [i]-[vii]),[FN1] BLC contends that it was improper for the Board to find that the mere inclusion of the statutory provisions in their written agreement, by itself, does not automatically satisfy the statute and exclude claimant's services from the definition of employment if, as the Board found the case to be here, some aspects of claimant's services, as well as certain other provisions in their written [*2]agreement, did not conform to the statutorily-required provisions set forth in their written agreement. We disagree.
We have held that, in a case where the written agreement does not contain all seven statutorily-enumerated provisions, we may not look to the parties' conduct to cure or overlook the deficiencies in such an agreement for purposes of excluding an insurance agent's or broker's services from the definition of employment pursuant to Labor Law § 511 (21) (see Matter of Joyce [Coface N. Am. Ins. Co.-Commissioner of Labor], 116 AD3d at 1133). However, we agree with the Board that, in a case such as this where all seven statutory provisions are present in the parties' written agreement, the mere verbatim inclusion or rote incantation of the seven enumerated provisions will not automatically exclude an insurance agent's or broker's services from the definition of employment "if it be proven" that the parties' conduct did not actually conform to the seven statutory provisions contained therein (Labor Law § 511 [21]). Indeed, contrary to BLC's contention, the plain language of Labor Law § 511 (21) requires that "the services performed by the agent or broker are performed pursuant to a written contract . . . [which] contains the [seven enumerated] provisions" (Labor Law § 511 [21] [c]-[d] [emphasis added]). In our view, the statute therefore requires not only the inclusion of the seven statutory provisions in the parties' written agreement but also that the services performed by the insurance agent or broker actually be consistent with those provisions (see Labor Law § 511 [21] [c]-[d]). To allow an employer to exclude an insurance agent's or broker's services from the scope of the term "employment" by mere inclusion of the seven statutorily-enumerated provisions in their written agreement would — in cases where there is evidence demonstrating that the parties' conduct was contrary to, or inconsistent with, any one of the statutorily-enumerated provisions — elevate the form of such an agreement over the substance of the parties' actual relationship and undermine the purposes of Labor Law § 511 (21) and unemployment insurance benefits (see generally Letter from Workers' Comp Bd, July 15, 2002, Bill Jacket, L 2002, ch 574). Because there is evidence in the record before us demonstrating that at least some aspects of claimant's services were performed in a manner inconsistent with the statutorily-required provisions in their written agreement, we find that the requirements of Labor Law § 511 (21) were not met. As such, we turn to BLC's challenge to the Board's finding that an employment relationship existed under the common-law test.
"Whether an employment relationship exists within the meaning of the unemployment insurance law is a question of fact, no one factor is determinative and the determination of the Board, if supported by substantial evidence on the record as a whole, is beyond further judicial review even though there is evidence [*3]in the record that would have supported a contrary conclusion" (Matter of Thomas [US Pack Logistics, LLC-Commissioner of Labor], 189 AD3d 1858, 1859 [2020] [internal quotation marks and citations omitted]; see Matter of Vega [Postmates Inc.-Commissioner of Labor], 35 NY3d 131, 136 [2020]). "Substantial evidence is a minimal standard requiring less than a preponderance of the evidence. As such, if the evidence reasonably supports the Board's choice, we may not interpose our judgment to reach a contrary conclusion" (Matter of Vega [Postmates Inc.-Commissioner of Labor], 35 NY3d at 136-137 [internal quotation marks, brackets and citations omitted]). "Traditionally, the Board considers a number of factors in determining whether a worker is an employee or an independent contractor, examining all aspects of the arrangement. But the touchstone of the analysis is whether the employer exercised control over the results produced by the worker or the means used to achieve the results" (id. at 137 [internal quotation marks, brackets and citations omitted]; see Matter of Mayo [Epstein-Commissioner of Labor], 193 AD3d 1199, 1200 [2021]; Matter of Jordan [Alterna Holdings Corp.-Commissioner of Labor], 187 AD3d 1264, 1265 [2020]).
Here, there is ample evidence to support the Board's finding that BLC exercised control over numerous aspects of claimant's work. BLC, among other things, set product prices, paid claimant according to its commission schedule that it could modify at any time in its discretion, offered claimant the opportunity to earn a bonus pursuant to an enhanced commission program, did not allow claimant to assign the written agreements without prior written consent of BLC, maintained ownership of all policyholder data, records, material and supplies that were furnished to claimant during the course of business and prohibited claimant from soliciting or servicing BLC's policy holders for two years following the termination of the their written agreement. Although claimant was permitted to sell products for other competitor companies, BLC provided claimant with sales leads that he was required to use for BLC purposes, paid for the cost of sales leads for the first three months of claimant's work and subsidized a portion of the cost of those sales leads thereafter. BLC's underwriting department reserved the right to accept or reject insurance proposals submitted by claimant and to reinstate any delinquent policies (see Matter of Joyce [Coface N. Am. Ins. Co.-Commissioner of Labor], 116 AD3d at 1134). BLC also paid commissions in advance and, to do so, would withhold 10% of an agent's commission until he or she banked $1,000 in sales. BLC required customers to submit payments directly to BLC, which maintained exclusive authority to deposit such payments, and required claimant to use its own software system, or an approved software system, to solicit new customers by telephone. Significantly, upon entering into their written agreement, BLC would [*4]screen the insurance broker by conducting a background investigation of the broker before he or she could begin working for BLC (see Matter of Rodriguez [Penn Mut. Life Ins. Co.-Commissioner of Labor], 193 AD3d at 1192; Matter of Giampa [Quad Capital, LLC-Commissioner of Labor], 181 AD3d 1129, 1129-1130 [2020]; Matter of Ivy League Tutoring Connection, Inc. [Commissioner of Labor], 119 AD3d 1260, 1260-1261 [2014]). BLC's branch manager also tutored and assisted claimant with obtaining his broker's license, and BLC scheduled mandatory trainings for claimant when he started working for BLC.
In our view, the foregoing proof is sufficient to support the Board's finding of an employment relationship between BLC and claimant, notwithstanding the existence of other evidence in the record that could support a contrary conclusion (see Matter of Rodriguez [Penn Mut. Life Ins. Co.-Commissioner of Labor], 193 AD3d at 1192; Matter of Joyce [Coface N. Am. Ins. Co.-Commissioner of Labor], 116 AD3d at 1134-1135). "Although it is unclear whether the Board expressly considered the relevant guidelines adopted by the Department in ascertaining claimant's employment status as an insurance broker (see New York State Department of Labor, Guidelines for Determining Worker Status: Insurance Sales Industry [Nov. 2013]), we discern no inconsistency between either the guidelines and the common-law employer-employee test or the guidelines and the Board's decision" (Matter of Rodriguez [Penn Mut. Life Ins. Co.-Commissioner of Labor], 193 AD3d at 1192-1193; see Matter of Joyce [Coface N. Am. Ins. Co.-Commissioner of Labor], 116 AD3d at 1135; compare Matter of Lee [AXA Advisors LLC-Commissioner of Labor], 196 AD3d 975, 976 [2021]). Finally, contrary to BLC's contention, the Board properly held that its finding of employment applied to all others determined to be similarly situated to claimant (see Labor Law § 620 [1] [b]; Matter of Thomas [US Pack Logistics, LLC-Commissioner of Labor], 189 AD3d 1858, 1860 [2020]; Matter of Mitchum [Medifleet, Inc.-Commissioner of Labor], 133 AD3d 1156, 1157-1158 [2015]; Matter of Robinson [New York Times Newspaper Div. of N.Y. Times Co.-Hartnett], 168 AD2d 746, 747-748 [1990], lv denied 78 NY2d 853 [1991]). To the extent that BLC's remaining contentions that are properly before us have not been specifically addressed, they have been examined and found to be lacking in merit.
Garry, P.J., Lynch, Clark and Reynolds Fitzgerald, JJ., concur.
ORDERED that the decisions are affirmed, without costs.



Footnotes

Footnote 1: The statutorily-enumerated provisions included in a written agreement must, among other things, (1) identify and treat the insurance agent or broker as an independent contractor for tax and insurance purposes, (2) require that the agent or broker be paid a commission on his or her gross sales without deduction for taxes, not receive any remuneration for the number of hours worked and not be treated as an employee for federal and state tax purposes, (3) permit the agent or broker to work any hours he or she chooses, (4) permit the agent or broker to work out of his or her own office or home or the office of the person or entity for whom services are performed, (5) provide that the agent or broker bear his or her own expenses, although the person or entity for whom the services are performed may provide office facilities, clerical support and supplies to the agent or broker, (6) require the parties to comply with the requirements of Insurance Law article 21, and the regulations pertaining thereto, governing insurance agents and brokers and (7) permit either party to the written agreement to terminate the agreement at any time with notice given to the other (see Labor Law § 511 [21] [d] [i]-[vii]; see also NY Dept of Labor, Guidelines for Determining Worker Status: Insurance Sales Industry at 2-3 [Dec. 2020]; NY Dept of Labor, Guidelines for Determining Worker Status: Insurance Sales Industry at 2-3 [Nov. 2017]; NY Dept of Labor, Guidelines for Determining Worker Status: Insurance Sales Industry at 2-3 [Sept. 2013]).